IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> -v- <br><br> MIGUEL ARNULFO VALLE VALLE, *et al.* <br> Defendants. | Criminal No. 1:14-cr-135 <br><br> Hon. Liam O'Grady |

## MEMORANDUM OPINION

This matter comes before the Court on the joint motion to dismiss the indictment (Dkt. No. 64) and joint motion for a bill of particulars (Dkt. No. 77) filed by Miguel Arnulfo Valle Valle and Luis Alonso Valle Valle. The government opposed the motion to dismiss (Dkt. No. 73) and the defendants replied. (Dkt. No. 76). The government also opposed the motion for a bill of particulars. (Dkt. No. 80). The Court heard oral argument on May 1, 2015.

### I. Background

On June 19, 2014, a federal grand jury in the Eastern District of Virginia returned a superseding indictment against Miguel Arnulfo Valle Valle ("Miguel Arnulfo"),[1] Luis Alonso Valle Valle ("Luis Alonso"), and thirteen co-conspirators. The indictment alleges the following offenses: conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1); conspiracy to distribute five kilograms or more of cocaine with intent to import in violation of 21 U.S.C. §§ 963 and 959(a) (Count 2); and conspiracy to engage in money laundering in violation of 18 U.S.C. § 1956 (Count 3). Miguel Arnulfo and Luis

---

[1] The government and the defendants refer to Miguel Arnulfo as "Arnulfo" and "Miguel" respectively. The Court will refer to this defendant as "Miguel Arnulfo" throughout this Memorandum Opinion.

1

Alonso ("the Valles") have also been charged in the Southern District of Florida with conspiracy to distribute five kilograms or more of cocaine with intent to import in violation of 21 U.S.C. §§ 963 and 959(a). *See* Case No. 1:13cr20897 (S.D. Fla.).

On or about December 18, 2014, Miguel Arnulfo and Luis Alonso were extradited to the United States. The Valles initially entered the United States through Miami International Airport in the Southern District of Florida, and they were immediately brought to the Eastern District of Virginia for their initial appearance in the instant case.

## II. Motion to Dismiss

### A. Standard of Review

The defendants have moved to dismiss the superseding indictment ("indictment") for improper venue pursuant to Federal Rules of Criminal Procedure 12(b)(3)(A)(i) and 18.[2] *See* Defs.' Mem. in Supp. at 1. Objections to venue "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(A)(i). A motion to challenge the sufficiency of the indictment is "ordinarily limited to the allegations contained in the indictment." *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012). "A district court may dismiss an indictment under Rule 12 where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *Id.* (citations and internal quotation marks omitted). Accordingly, to warrant dismissal of the indictment for improper venue, the defendants must show that the allegations therein, even if true, do not establish venue. *Id.*

---

[2] The government has consented to the dismissal of Count 2 as to the Valles because venue for that charge is proper in the Southern District of Florida. *See* Pl.'s Response at 2 – 3. The Court granted the government's consent motion to voluntarily dismiss Count 2 with prejudice as to the Valles. *See* Order (Dkt. No. 82). Accordingly, only Counts 1 and 3 are at issue.

2

## B. Discussion

The United States Constitution protects the right of federal criminal defendants to be tried in the State and district where the alleged crime was committed. *See Engle*, 676 F.3d at 412 (4th Cir. 2012) (citing U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; Fed. R. Crim. P. 18); *United States v. Wilson*, 262 F.3d 305, 320 (4th Cir. 2001); *United States v. Bowens*, 224 F.3d 302, 308 (4th Cir. 2000). This right has been codified in Rule 18, which provides in relevant part: "Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. The government bears the burden of establishing by a preponderance of the evidence that venue is proper on each count of the indictment. *See Engle*, 676 F.3d at 412 (stating that "circumstantial evidence can be sufficient to establish proper venue") (citation omitted); *Wilson*, 262 F.3d at 320; *Bowens*, 224 F.3d at 308.

"Although the venue rule 'seems straightforward, the place of the crime can be difficult to determine.' " *Engle*, 676 F.3d at 413 (quoting *Bowens*, 224 F.3d at 308).

> If Congress does not explicitly provide for venue when it enacts a criminal statute, venue is to be determined from the nature of the crime alleged and the location of the act or acts constituting it. This assessment must focus on the essential conduct elements of the charged offense, and is also guided by the general venue provisions for federal criminal offenses, set forth in 18 U.S.C. §§ 3231–3244.

*Engle*, 676 F.3d at 413 (quoting *United States v. Ebersole*, 411 F.3d 517, 524 (4th Cir. 2005)) (internal citation and quotation marks omitted).

"The inquiry into the place of the crime may yield more than one appropriate venue, *see* 18 U.S.C. § 3237(a), or even a venue in which the defendant has never set foot..." *Bowens*, 224 F.3d at 309. Accordingly, as the United States Supreme Court and the United States Court of Appeals for the Fourth Circuit have instructed, this Court must examine each count of the indictment to determine (1) the nature of the crime alleged (the conduct constituting the offense)

3

and (2) the location of that criminal conduct. *See United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999) (citing *United States v. Cabrales*, 524 U.S. 1, 6 – 7 (1998) (quoting *United States v. Anderson*, 328 U.S. 699, 703 (1946))); *Wilson*, 262 F.3d at 321; *Bowens*, 224 F.3d at 309.

**C. Count 1**

Count 1 charges the defendants with drug conspiracy in violation of 21 U.S.C. §§ 841 and 846. Sections 841 and 846 do not contain explicit venue provisions. Accordingly, the Court will examine the statutes to identify the conduct constituting the offense and the location of the commission of that conduct.

*1. Nature of the Alleged Offense*

In determining the nature of the offense, the Court examines the statute defining the offense in order to identify the "essential conduct elements" of the alleged crime. *Engle*, 676 F.3d at 413 (citation omitted); *Bowens*, 224 F.3d at 314 ("venue for a criminal prosecution must be determined solely in reference to the essential conduct elements of the charged offense."). Count 1 charges the defendants with conspiracy to distribute five or more kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. *See* Superseding Indictment at 2 – 3, 15. Section § 841(a)(1) provides that "it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." § 841(a)(1). Section 846 provides as follows: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." § 846.

The relevant essential conduct elements of the alleged offense are therefore: (1) conspiring (2) to manufacture, distribute, dispense, or possess cocaine, a controlled substance. *See United States v. Stewart*, 256 F.3d 231, 244 (4th Cir. 2001) (holding that "[t]he essential conduct element of a § 841(a)(1) offense is possession" where defendant was convicted of possession with intent to distribute marijuana).

### 2. Location of the Alleged Offense

"Conspiracy is a continuing offense, constantly renewing itself." *United States v. Carter*, 300 F.3d 415, 427 (4th Cir. 2002). "It is clear that an offense committed in more than one district may be prosecuted in any district that such offense was begun, continued, or completed." *See United States v. Gilliam*, 975 F.2d 1050, 1057 (4th Cir. 1992) (citing 18 U.S.C. § 3237(a)). "Furthermore, venue on a conspiracy charge may be laid in any district in which the agreement was formed or in which an act in furtherance of the conspiracy was committed." *Id.*; *see also Bowens*, 224 F.3d at 311 n. 4 ("[I]n a conspiracy charge, venue is proper for all defendants wherever the agreement was made or wherever any overt act in furtherance of the conspiracy transpires.") (citing *Hyde v. United States*, 225 U.S. 347, 356 – 367 (1912)); *United States v. Al-Talib*, 55 F.3d 923, 928 (4th Cir. 1995)). Importantly, "the overt act of one conspirator in a district suffices to establish venue for all other co-conspirators in that district." *United States v. Mitchell*, 70 F. App'x 707, 711 (4th Cir. July 31, 2003) (per curiam) (citing *Al-Talib*, 55 F.3d at 928).

Here, the defendants argue that the factual allegations are insufficient because the indictment establishes two conspiracies, one which maintained a purpose of distributing cocaine to the Eastern District of Virginia, and the other which involved moving cocaine through Honduras for importation into the United States. *See* Defs.' Mem. in Supp. at 8 – 9. According

5

to the defendants, the indictment only alleges the Valles' involvement with the latter conspiracy, not the first.

Related to the multiple conspiracies argument is the defendants' contention that Miguel Arnulfo and Luis Alonso had only a seller-buyer relationship with the defendants who ultimately distributed cocaine in Virginia. *See* Defs.' Mem. in Supp. at 12 – 14. The Valles rely on *United States v. Townsend*, 924 F.2d 1385 (7th Cir. 1991), which stands for the proposition that "evidence of a buyer-seller relationship, standing alone, is insufficient to support a conspiracy conviction." *Townsend*, 924 F.2d at 1394. However, as the defendants concede, *Townsend* has been distinguished by the Fourth Circuit. *See* Defs.' Mem. in Supp. at 13.

> ...*Townsend* seems to take the view that "The mere purchase or sale of drugs (even in large quantities) does not demonstrate an agreement to join a drug distribution conspiracy." [*Townsend*, 924 F.2d at 1394.] We decline to go this far. In our view, evidence of a buy-sell transaction is at least relevant (i.e. probative) on the issue of whether a conspiratorial relationship exists. Moreover, we believe evidence of a buy-sell transaction, when coupled with a substantial quantity of drugs, would support a reasonable inference that the parties were coconspirators.

*United States v. Mills*, 995 F.2d 480, 485 n. 1 (4th Cir. 1993).

*See also United States v. Hackley*, 662 F.3d 671, 679 (4th Cir. 2011) ("Since [*Mills*], we have held that evidence of a continuing buy-sell relationship when coupled with evidence of large quantities of drugs, or continuing relationships and repeated transactions, creates a reasonable inference of an agreement.") (citation and internal quotation marks omitted).

The indictment alleges that the primary purpose of the Valle drug trafficking organization ("DTO") was to make money by trafficking drugs through Honduras into the Eastern District of Virginia and other areas of the United States. *See* Superseding Indictment at 6. The Valle DTO defendants allegedly conspired, from approximately 2005 to June 2014, to distribute five kilograms or more of cocaine "within the Eastern District of Virginia and elsewhere." *Id.* at 2.

Miguel Arnulfo was allegedly the head of the organization, managing its day to day operations, maintaining trafficking routes, and employing underlings. *Id.* at ¶ 6(a). Luis Alonso is the brother of Miguel Arnulfo and was allegedly his second in command, sharing responsibilities in the Valle DTO as well as profits with Miguel Arnulfo. *Id.* at ¶ 6(b).

Jose Inocente Valle Valle ("Jose Inocente") is the brother of Miguel Arnulfo and Luis Alonso, and he allegedly imported cocaine directly into the United States. *Id.* at ¶ 6g. Marlen Griselda Amaya Argueta ("Marlen") is Jose Inocente's wife, and she also allegedly imported cocaine into the United States. *Id.* at ¶ 6h. In carrying out the conspiracy, Miguel Arnulfo and Luis Alonso allegedly supplied Jose Inocente with cocaine on some occasions, which he and Marlen would import into the United States with the assistance of other co-conspirators. *Id.* at ¶ 10. According to the government, other co-conspirators responsible for sending cocaine directly into the United States include Aristides Diaz Diaz ("Aristides"), Dirlo Nolasco Argueta ("Dirlo"), Delis Abner Martinez Palencia ("Abner"), Jose Adali Amaya Argueta ("Adali"), Jose Raul Amaya Argueta ("Raul"), and Osman Donay Martinez Guevara ("Osman"). *Id.* at ¶¶ 6(j) – (o).

Several alleged overt acts in furtherance of the conspiracy occurred in the Eastern District of Virginia: (1) On or about February 19–20, 2012, Dirlo sent cocaine to the Eastern District of Virginia with a courier and directed a co-conspirator in the United States to send cocaine proceeds back to Dirlo's wife in Honduras. *Id.* at ¶¶ 27, 28.[3] (2) On or about March 22, 2012, Abner, Aristides, and others sent approximately 3.1 kilograms of cocaine to Dulles International

---

[3] The defendants assert in reply that this allegation does not establish that the cocaine actually arrived in Virginia. *See* Defs.' Reply at 3. However, the Court must view the facts in the light most favorable to the government when ruling on a motion to dismiss the indictment. *See, e.g., United States v. Fenzl*, 731 F. Supp. 2d 796, 799 (N.D. Ill. 2010) (quoting *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999)). Accordingly, the Court construes the statement in ¶ 27 to mean that the cocaine sent to the Eastern District of Virginia actually arrived in Virginia. At any rate, there are also other allegations establishing that overt acts occurred within the Eastern District of Virginia.

7

Airport ("Dulles Airport") in Sterling, Virginia, which is located within the Eastern District of Virginia. *Id.* at ¶ 30. (3) During the conspiracy, Jose Inocente, Marlen, Aristides, Dirlo, Abner, Adali, Raul, Osman, and others received cocaine proceeds through wire transfers initiated in the Eastern District of Virginia and elsewhere. *Id.* at ¶ 38. The indictment includes a table showing amounts of money received by the defendants named in ¶ 38 via wire transfers initiated in the Eastern District of Virginia and elsewhere. *See id.* at 11 – 12.

These allegations cited above establish that unnamed co-conspirators initiated, in the Eastern District of Virginia, wire transfers of cocaine proceeds to Jose Inocente, Marlen, and others, and that named and unnamed co-conspirators sent cocaine to Virginia. In light of the government's allegations that the Valles were involved in a continuing relationship and scheme with the named and unnamed co-conspirators, these allegations are sufficient to establish that Miguel Arnulfo and Luis Alonso allegedly participated in a conspiracy to distribute drugs in Virginia and elsewhere in the United States.

Further, additional allegations support the inference that the Valles conspired to distribute drugs within the United States, including and not limited to the Eastern District of Virginia. For example, the indictment alleges that on or about April 20, 2012, a courier carrying approximately 1.3 kilograms of cocaine on behalf of the Valle DTO was apprehended in Houston, Texas with a final destination of Dulles Airport. *Id.* at ¶ 34. Co-conspirators and couriers employed by the Valle DTO also sent cocaine to Houston, New York, and Miami, Florida. *Id.* at ¶¶ 29, 35, 37.

The defendants next argue that the distribution of cocaine in Virginia was not reasonably foreseeable to them, relying on *Townsend* and *United States v. Bush*, 813 F. Supp. 1175 (E.D. Va. 1993). *See* Defs.' Mem. in Supp. at 13. However, neither case discusses this issue in the context of a motion to dismiss for improper venue. Rather, both cases discuss the principle that a

criminal defendant can only be sentenced for the "conduct of others that was both '(i) in furtherance of the jointly undertaken criminal activity; and (ii) reasonably foreseeable in connection with that criminal activity.' " *Bush*, 813 F. Supp. at 1178 (quoting U.S.S.G. § 1B1.3, application n. 2 (1992)); *see also Townsend*, 924 F.2d at 1389. Issues regarding sentencing are premature, as the defendants have not been convicted of any charges. Accordingly, neither *Bush* nor *Townsend* affect the Court's disposition of the instant motion.

Relatedly, the defendants argue that the government's evidence is insufficient to establish venue. *See* Defs.' Mem. in Supp. at 8 – 11. The Court must also reject this argument as premature. The Fourth Circuit has held:

> Whether there is a single conspiracy or multiple conspiracies, as well as an agreement to participate in the conspiracy, is a question of fact for the jury and we must affirm its finding of a single conspiracy unless the evidence, taken in the light most favorable to the government, would not allow a reasonable jury so to find.

*United States v. Harris*, 39 F.3d 1262, 1267 (4th Cir. 1994) (citation and internal quotation marks omitted).

*See also United States v. Banks*, 10 F.3d 1044, 1051 (4th Cir. 1993) (stating that whether a single charged conspiracy has been "sufficiently established by the evidence is an issue for the jury") (citation omitted). This Court is of course unable to make a determination on the sufficiency of the evidence, given that no trial has occurred and no evidence has been adduced.

Moreover, if the Court were to consider the evidence, the Court could not restrict the scope of review to the items of evidence highlighted by the Valles, namely the statements made during recorded calls from Honduras to individuals in the Eastern District of Virginia in March through May of 2012. *See* Defs.' Mem. in Supp. at 5 – 6. During the calls, Jose Inocente and Marlen evidently made statements implicating Miguel Arnulfo and Luis Alonso in the Virginia drug transactions. The defendants argue that these phone calls do not constitute sufficient

9

evidence of the Valles' involvement because Jose Inocente and Marlen's statements during the phone calls were mere lies or "puffery" to boost their credibility with drug suppliers. *Id.* at 9 – 10. With respect to Marlen, the defendants also contend that she has since indicated that her statements during the calls were false. *Id.* at 6, 9. However, as the government argues, these factual determinations are reserved for the jury, and cannot be properly resolved on a pre-trial motion to dismiss the indictment. It is simply premature for the Court to make a determination on the sufficiency of the evidence under these circumstances. For the foregoing reasons, the Court denies the motion to dismiss Count 1 for improper venue.

### D. Count 3

Count 3 charges the defendants with conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1), (a)(2)(A), (a)(2)(B)(i), and (h).[4] *See* Superseding Indictment at ¶ 69(a) – (c). Section 1956(a)(1) prohibits the use of proceeds of unlawful activity where a person knows of the illegal nature of the proceeds and conducts or attempts to conduct a financial transaction "with the intent to promote the carrying on of specified unlawful activity" or with the knowledge "that the transaction is designed in whole or in part—to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." § 1956(a)(1). Section 1956(a)(2)(A) prohibits the transmission of funds into or out of the United States "with the intent to promote the carrying on of specified unlawful activity." § 1956 (a)(2)(A). Section 1956(h) provides criminal liability for conspiracy to commit offenses described in § 1956. § 1956(h).

---

[4] The parties have not separately addressed Count 3, arguing that the analysis for Count 1 and Count 3 is the same. *See* Defs.' Mem. in Supp. at 1 n. 1 ("A conviction on Count 3, the money laundering count, is entirely dependent on the behavior asserted with respect to Count 1"); Pl.'s Response at 14 n. 4 ("Because the analysis is the same for the conspiracies charged in each of Count 1 and Count 3, as the defendants acknowledge, *see* Defs.' Mem. at 1 n.1, the government references only Count 1 here for simplicity."). The Court, however, separately examines venue for Count 3, as proper venue must be identified for each count in the indictment.

In relevant part, the venue provision of § 1956 provides as follows: "A prosecution for an attempt or conspiracy offense under this section...may be brought in the district where venue would lie for the completed offense under paragraph (1), or in any other district where an act in furtherance of the attempt or conspiracy took place." § 1956(i)(2). In turn, paragraph (1) provides in relevant part that venue lies in "any district in which the financial or monetary transaction is conducted." § 1956(i)(1)(A). Accordingly, § 1956(i) "authorizes two alternative venues for money laundering conspiracy prosecutions: (1) the district in which venue would lie if the completed substantive money laundering offense had been accomplished, or (2) any district in which an overt act in furtherance of the conspiracy was committed." *Whitfield v. United States*, 543 U.S. 209, 218 (2005).

Count 3 states that from approximately 2005 to April 2014, the defendants conspired "in the Eastern District of Virginia and elsewhere" to commit money laundering. Superseding Indictment at ¶ 69. Further, the count incorporates by reference the preceding paragraphs. *Id.* at ¶ 67. Thus, the allegation in ¶ 38, that Jose Inocente, Marlen, Aristides, Dirlo, Abner, Adali, Raul, Osman, and others known and unknown received cocaine proceeds through wire transfers initiated in the Eastern District of Virginia and elsewhere is incorporated into Count 3. Therefore, an act in furtherance of the alleged conspiracy—the initiation by unnamed co-conspirators of transfers of proceeds of specified unlawful activity (distributing cocaine)— allegedly occurred in this district. Further, the indictment alleges that the substantive money laundering offense, which appears to have been completed, was initiated in the Eastern District of Virginia. Accordingly, unnamed co-conspirators allegedly conducted financial transactions in this district, resulting in the transmission of funds to the Valles' named co-conspirators. For the

foregoing reasons, the indictment establishes venue under either alternative listed in § 1956(i). The Court therefore denies the motion to dismiss Count 3 for improper venue.

### III. Motion for Bill of Particulars

#### A. Standard of Review

The defendants have filed a motion for a bill of particulars pursuant to Rule 7(f) and the Fifth and Sixth Amendments to the Constitution. *See* Defs.' Mem. in Supp. at 1. Rule 7(f) allows a defendant to "move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). Under Rule 7(c) of the Federal Rules of Criminal Procedure, an indictment need only set forth a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). Whether to grant a motion for a bill of particulars is a matter committed to the sound discretion of the district court. *See United States v. Am. Waste Fibers Co., Inc.*, 809 F.2d 1044, 1047 (4th Cir. 1987).

#### B. Discussion

A bill of particulars is appropriate when an indictment fails to provide adequate information to allow a defendant to understand the charges against him and to avoid unfair surprise. *See Am. Waste Fibers*, 809 F.2d at 1047; *see also United States v. Jackson*, 757 F.2d 1486, 1491 (4th Cir. 1985); *United States v. Schembari*, 484 F.2d 931, 934–935 (4th Cir. 1973). The purpose of a bill of particulars is to amplify an indictment by providing missing or additional information so a defendant may effectively prepare for trial. *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996). This pleading is not intended to allow defendants to preview the government's evidence or its legal theory. *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985) (citation omitted). A court "must not direct the government to reveal

the details of its evidence or the precise manner in which it will make its proof in a bill of particulars." *United States v. Le*, 310 F. Supp. 2d 763, 781 (E.D. Va. 2004) (citations omitted).

The defendants argue that the indictment is insufficient because two separate conspiracies are alleged. The Valles ask the Court to require the government to provide additional information regarding (1) specific acts committed by the Valles in the Eastern District of Virginia, and (2) acts committed by co-conspirators that bear on the Valles' knowledge of the conspiracy to distribute cocaine in the Eastern District of Virginia. *See* Defs.' Mem. in Supp. at 3. The Court has already rejected as premature the defendants' argument that the indictment pleads multiple conspiracies rather than a single conspiracy. For the reasons discussed above, the Court finds that the indictment provides sufficient information to allow the defendants to understand the charges against them and avoid unfair surprise. Accordingly, the Court denies the motion for a bill of particulars.

## IV. Conclusion

For the foregoing reasons, it is hereby

ORDERED that the motion to dismiss Counts 1 and 3 of the superseding indictment (Dkt. No. 64) is DENIED without prejudice to refile after the close of the government's case at trial pursuant to Federal Rule of Criminal Procedure 29. It is further

ORDERED that the motion for a bill of particulars (Dkt. No. 77) is DENIED.

An appropriate order shall issue.

Date: August 18, 2015
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge